**In re SWIZZLESTICK, L.L.C., Debtor.**

**No. 00–40298–JWV.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Sept. 19, 2000.

David Ferguson, Kansas City, MO, for debtor.

Paul M. Hoffmann, Kansas City, MO, for Eric Hill.

### MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

This case comes before the Court at this juncture on the Debtor's Motion to Ap-

prove Compromise and Settlement Agreement Among Debtor, Novomira Management Group, L.L.C., Loy L. Edge, III, Jay G. Edge, and Eric Hill, filed on August 3, 2000. Creditor Security Bank of Kansas City filed a Limited Objection on August 14, 2000, and Creditor Columbian Bank and Trust filed an Objection on August 23, 2000.

The Court held a hearing on the Debtor's Motion on September 5, 2000. At the outset of the hearing, counsel for the Debtor and counsel for Security Bank of Kansas City announced that Security Bank of Kansas City's Limited Objection had been resolved.[1] Therefore, the only remaining issues were the Debtor's Motion and Columbian Bank's Objection thereto.

The following constitutes the Court's Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

## FACTUAL BACKGROUND

The Factual Background relevant to this matter has been set out by the Debtor and Eric Hill in their Motion to Approve Compromise and Settlement and attached Settlement Agreement (Case No. 00–40298, Doc. No. 31) and is uncontroverted with the exception of the priority of Eric Hill's lien on the assets of the Debtor vis-a-vis Columbian Bank's lien on the same. Therefore, for the sake of brevity, we hereby incorporate by reference the facts as set forth in the Debtor's and Eric Hill's

Motion to Approve Compromise and Settlement and attached Settlement Agreement (Case No. 00–40298, Doc. No. 31), but reserve for determination herein the facts regarding the priority of Eric Hill's lien.

## DISCUSSION

Columbian Bank ("Columbian") objects on several grounds to the Debtor's Motion to Approve Compromise and Settlement. These include assertions that: Columbian has a lien on the Debtor's assets superior to Hill's,[2] the Debtor has failed to supply enough information to enable the creditors to ascertain the current condition of the Debtor (specifically, that it has failed to file monthly operating reports since May 2000), and the settlement is not in the best interests of the bankruptcy estate. But, Columbian's initial and primary objection (and the one to which it devoted substantial efforts at the hearing) is that the Debtor's Motion is "procedurally defective," in that it seeks a determination that Hill has a "valid, enforceable, perfected, first priority lien and security interest, not subject to offset, subordination or avoidance" on substantially all the assets of the Debtor. Columbian asserts that such a determination can only be made through an adversary proceeding, which should have been brought by the Debtor prior to the instant Motion. We will deal with Columbian's procedural objection first.

### 1. Procedural Objection

▪ Columbian's contention that an adversary proceeding is necessary for the

---

1. The Debtor submitted a proposed Order Granting Motion to Approve Settlement that reflects the Debtor's and Security Bank's agreement. The proposed order provides an exclusion for Security Bank's Equipment Lease Agreements (identified in the Security Bank Objection) from the determination of Eric Hill's status as a first priority lien holder in the assets of the Debtor, identified in the Settlement Agreement. That provision has been incorporated into this Memorandum Opinion and Order.

2. This issue was not raised in either Columbian's Objection or post-trial brief. However, the Court will make a finding on it since Columbian did "assert" that its lien was superior to Hill's at the hearing (although it did so without evidentiary or legal support) and because the issue of priority is implicated by the terms of the Compromise and Settlement.

avoidance of a lien or a determination of secured status is not without merit or support. *See Keene v. Charles,* 222 B.R. 511, 513 (E.D.Va.1998) *affd* 178 F.3d 1284 (4th Cir.1999); *In re Poirier,* 214 B.R. 528, 529 (Bankr.D.Conn.1997); *In re Leibowitz,* 147 B.R. 341, 344 n. 1 (Bankr.S.D.N.Y.1992). *See also, In re Westfall,* 227 B.R. 734, 735 (Bankr.W.D.Mo.1998).[3] And when the issue before a court pertains solely to the avoidance of a lien or a determination of the validity, priority, or extent of a lien, we believe this proposition is without qualification. However, when such lien "issue" is ancillary or incidental to another "larger," primary issue, the Court holds that it has the authority to consider the issue if it believes that to do so would be in the interests of justice and judicial efficiency and can be accomplished without depriving any party or claimant of its procedural due process protections. Fed.R.Bankr.P. 9005; Fed.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). More specifically, the Court will not elevate the form of the proceeding in which a lien issue is to be considered, if the substance of the hearing on that issue is such that the objecting party has been afforded due process.

While there is merit to . . . [the] contention that a determination as to the validity, priority and extent of a lien is properly brought before a bankruptcy court within the context of an adversary proceeding pursuant to Bankr.R. 7001(2) rather than as a contested matter pursuant to Bankr.R. 9014, courts have concluded that where the rights of the affected parties have been adequately presented so that no prejudice has arisen, form will not be elevated over substance and the matter will be allowed to proceed on the merits as originally filed.

*In re Command Services Corp.,* 102 B.R. 905, 908 (Bankr.N.D.N.Y.1989). *See also, Keene* at 513–514 (considering the adequacy of due process afforded to creditor whose lien was being challenged); *In re Felker,* 181 B.R. 1017, 1020 (Bankr. M.D.Ga.1995) (stating that procedural defect could be waived and "[m]oreover, this Court is satisfied that the rights of the affected parties have been adequately presented so that no prejudice has arisen.") (citing *Command Services Corp., supra.*).

■ Upon consideration of all of the circumstances leading up to and surrounding the hearing on the Debtor's Motion for Approval of Settlement and Compromise, the Court determines that Columbian has received due process and will not be prejudiced by proceeding with the Debtor's Motion as filed.

The instant Motion to Approve Compromise and Settlement was filed on August 3, 2000. Notice of the hearing on this Motion and a copy of the Motion were mailed to Columbian's attorney on the same day. Paragraph B on the first page of the Motion states clearly that the Settlement determines that "Eric Hill has a valid, en-

---

**3.** Columbian also cites the decision of this Court in *In re Westfall,* 227 B.R. 734 (Bankr. W.D.Mo.1998) (Federman, J.). In that case, Judge Federman held that the Court could rule on a motion to avoid a lien where it had been brought as a counterclaim to a motion to lift stay and "no party objected to the Counterclaim as filed, and no party objected at the hearing that Columbian had not been afforded the protections found in the Rules that govern adversarial proceedings." *Id.* at 734. Although our holding here appears to conflict with Judge Federman's holding, inasmuch as Columbian has objected to the Debtor's Motion as filed and has objected that it has not been afforded the procedural protections of an adversary proceeding, we believe that our holding is consistent with the spirit of Judge Federman's holding considering the unique circumstances of this case; Columbian may have objected, in form, that it has been deprived of procedural protections, but it has never identified which protections it needs, why it needs them, or how it will suffer by not receiving them. In other words, Columbian's objection is hollow. Our paramount concerns, as most likely were Judge Federman's, are that all parties are afforded due process and that no one will be prejudiced by proceeding with the Motion as filed.

forceable, perfected, first priority lien and security interest, not subject to offset, subordination, or avoidance, on the Assets identified in the Settlement Agreement to secure the aggregate obligations of Debtor to Eric Hill ...." August 3 was a Thursday, so Columbian most likely had notice of the lien issue by August 7. As a practical matter, the evidence suggests that Columbian should have been on notice of Hill's claimed interest as early as February 23, 2000, when the Debtor's Motion for Authorization to Use Cash Collateral was filed and made specific reference to a potential dispute between Columbian's and Hill's interests. Notwithstanding the ample notice, Columbian waited until August 23, 2000, to file an objection to the proposed Compromise and Settlement. In that Objection, Columbian argued that the Motion was procedurally, "fatally" flawed, but did not give any reasons why Columbian would be harmed by the procedural defect, nor did it offer any evidence in support of its position that Hill's lien is invalid or subordinate.

At the hearing on the Debtor's Motion on September 5, 2000, the Court provided all of the parties a forum to present their arguments and evidence, and an opportunity to submit post-trial briefs. Columbian, however, chose not to use those opportunities to "defend" its purported, first priority lien. Instead, it offered arguments that focused almost entirely on the alleged procedural defect and suffered from the same two-dimensionality as its written Objection: Columbian argued that the form of the hearing was defective, but offered no reason how or why it was prejudiced by the defect.

In sum, Columbian has had ample notice of the issues that were to be heard at the hearing, ample time to prepare a substantive defense of its position, and ample time to present that defense at the hearing. Not only has Columbian had over a month since the Debtor's filing of the Notice of Compromise and Settlement to prepare a defense of its lien (and arguments against Hill's lien) to be presented at the hearing (without the costs associated with bringing its own adversary proceeding, we might add), it has had almost eight months to file its own adversary proceeding to determine the validity, priority, or extent of Hill's and/or Columbian's purported lien.[4] If Columbian required more time to mount a defense of its lien, it had ample time in which to petition the Court to obtain a continuance of the hearing or to seek other relief. Instead, Columbian waited twenty days to file its "procedural" objection, relied almost entirely on those procedural grounds at the hearing, and presented little or no evidence at the hearing in support of its argument that it has a lien superior to Hill's. In the absence of any substantial defense of its lien or specific argument regarding the harm it supposedly suffered as a result of the alleged procedural inadequacies of this hearing (e.g., inability to conduct discovery, inadequate time to prepare a defense, etc.), the Court is left to conclude that the entire purpose of Columbian's Objection is to obstruct the settlement between the Debtor and Hill, apparently in an attempt to extract some amount of money from Hill. The Court finds this a more objectionable abuse of procedure than the Debtor's good faith attempt at settlement.

For these reasons, we conclude that Columbian has been afforded due process, and therefore the Court may proceed to determine the validity, priority or extent of

---

4. At the hearing, Columbian protested that it should not bear the onus of bringing an adversary action to defend its lien. We disagree. From the face of the instruments indicating perfection, Hill's lien clearly appears to have first priority (see below). If·Columbian believed otherwise, it was as much Columbian's responsibility as the Debtor's to rectify the situation. If we were to accept Columbian's argument here, it would mean that every lienholder or mortgagee who has a first deed of trust on a property would have to bring an adversary action against a later-perfected lienholder in order to pursue, for example, a motion to lift the stay. This position is not supported by reason or the law.

Hill's lien as part of our consideration of the Debtor's Motion to Approve Compromise and Settlement. Accordingly, we now address the priority of Hill's lien vis-a-vis Columbian's lien.[5]

■ Both of the liens at issue here (Hill's and Columbian's) are blanket liens on all of the personal property and fixtures owned by the Debtor. As such and because Swizzlestick, L.L.C., has its place of business in only one county of the state, perfection of their liens requires the filing of a financing statement with the Secretary of State *and* the office of the recorder of deeds for the county in which the Debtor does business, which in this case is Jackson County, Missouri. Mo.Rev.Stat. § 400.9–401. Pursuant to Mo.Rev.Stat. § 400.9–312(5), priority between conflicting security interests in the same collateral is determined by rank in priority in the time of filing or perfection. The order of filing for Hill's and Columbian's liens is as follows:

1. November 18, 1996, Columbian's financing statement (UCC–1) is filed with the Missouri Secretary of State.
2. October 15, 1998, Hill's UCC–1 is filed with the Missouri Secretary of State.
3. November 23, 1998, Hill's UCC–1 is filed with the Jackson County Recorder of Deeds.
4. December 9, 1999, Columbian's UCC–1 is filed with the Jackson County Recorder of Deeds.

Applying the above statutes to the facts, Hill perfected his security interest against the Debtor on November 23, 1998, when he filed his financing statement with the Jackson County Recorder of Deeds (having already done so with the Missouri Secretary of State on October 15, 1998). Columbian, on the other hand, did not perfect its security interest against the Debtor until it filed its financing statement with the Jackson County Recorder of Deeds on December 9, 1999. Therefore, ranking the security interests according to the time of perfection, Hill's security interest is superior to Columbian's.[6]

## 2. "Relief from Stay Against Hill is Inappropriate"

In addition to Columbian's procedural objection, Columbian contends that the provision of the Settlement that provides for the termination of the automatic stay against Hill to allow him to repossess and foreclose his collateral fails to allege any grounds for relief from the automatic stay. That is incorrect; the stay may be lifted for "cause," 11 U.S.C. § 362(d), and Paragraph 18 of the Debtor's Motion specifically states: "Entry of an order granting the relief requested in this Motion is appropriate under relevant law, including but not limited to ... § 362 ...', and for cause, including but not limited to ...". That section continues, listing five "causes" why the stay should be lifted. We have reviewed those causes and find them to be sufficient, especially in the absence of any specific objection to them.

## 3. Other Objections.

■ Columbian also makes a number of miscellaneous objections. These, too, will be overruled. First, Columbian contends that the Debtor has failed to submit monthly operating reports since May 2000, and therefore it is impossible for creditors to ascertain the Debtor's financial position. In response, Hill stated in his post-trial brief that those operating reports were filed prior to the hearing. This appears from the file to be correct. Furthermore, the Court believes that sufficient evidence

---

**5.** In its Objection, Columbian also stated that Hill's lien is invalid under Missouri law, but has offered absolutely no support for this assertion either in its pleadings or at the hearing. Consequently, the objection based on that ground is overruled.

**6.** As an aside, the Court would further note that the perfection of Columbian's lien occurred within 90 days of the bankruptcy filing and therefore is, most likely, preferential under the provisions of 11 U.S.C. § 547.

was presented at the hearing to enable creditors to adequately ascertain the condition of the Debtor and the impact of the Settlement. Therefore, this objection is overruled.

Second, Columbian suggests that the Debtor has been abandoned by its principals. Other than the fact that one of the principals, Loy L. Edge, III, has recently moved to California, Columbian offered no evidence to support this claim. Furthermore, the evidence presented at the hearing demonstrated that the cause of the Debtor's failing condition was unrelated to Loy's departure to California. This argument has no bearing on the settlement; if anything, the absence of one of the Debtor's principals would seem to cut in favor of approving the proposed settlement.

Finally, Columbian asserts that the Settlement benefits the principals more than the Debtor, apparently on grounds that the principals will be released from certain guarantees to Hill. This is a common provision in most "global" settlement agreements. Columbian presented little or no evidence of this assertion at the hearing, and the Court does not find it to be true.

### 4. Approval of the Settlement

Finally, the Court finds that the Settlement is in the best interests of the Debtor and the bankruptcy estate and should be approved. It will put an end to expensive, multi-count litigation in this Court and in the District Court, litigation which the Debtor cannot afford to pursue and in which the Debtor is not likely to prevail.

The Settlement will produce $50,000.00 for the bankruptcy estate, which Hill will pay as part of the settlement. It will resolve Hill's claims for more than $500,000.00 in damages, in exchange for restaurant assets of relatively minimal value. It will eliminate an approximately $50,000.00 claim by the Debtor's landlord for breach of the restaurant's lease; Hill has agreed to pay that claim as a condition for his being able to enter into a new lease at the same location. Lastly, the Debtor's precarious financial condition and its inability to continue its operations on a successful basis warrant a conclusion that the Debtor cannot successfully reorganize, and the proposed settlement offers the best chance to obtain something for its remaining, limited assets. For all of theses reasons, the Court concludes that the proposed settlement is in the best interests of the creditors, the Debtor, and the bankruptcy estate.[7]

### CONCLUSION

Based on the uncontroverted facts (with the exception of the lien issue), as recited by Hill and the Debtor in their Motion to Approve Compromise and Settlement and in the Settlement Agreement, and based on the Court's own independent assessment of the pending litigation and the condition of the Debtor, the Court finds that the Compromise and Settlement of Adversary No. 00–4059 is fair and equitable[8] and in the best interests of the estate.[9]

**7.** *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1382 (9th Cir.) cert. denied, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). *See also, In re Apex Oil Co.* 92 B.R. 847, 867 (Bankr.E.D.Mo.1988) ("This Court need not conclusively determine claims subject to compromise, nor find that the settlement constitutes the best result obtainable. Instead, this Court need only canvass the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness. The Court should reach an informed and independent judgment as to whether the compromise is in the best interests of the estate. However, the debtor-in-possession's judgment in recommending a settlement should not be substituted as long as the settlement is reasonable.") (citations omitted).

**8.** *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968).

**9.** *Connecticut General Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mtg. Corp.*), 68 F.3d 914, 917 (5th Cir.1995).

Therefore, for the reasons stated above, it is

**ORDERED** that Creditor Columbian Bank and Trust's Objection to the Debtor's Motion to Approve Compromise and Settlement Agreement be and is hereby OVERRULED. It is

**FURTHER ORDERED** that Creditor Security Bank of Kansas City's Limited Objection be and is hereby OVERRULED as moot. It is

**FURTHER ORDERED** that the Debtor's Motion to Approve Compromise and Settlement be and is hereby GRANTED. It is

**FURTHER ORDERED** that, except for the Equipment Lease identified in the Security Bank Limited Objection (Case No. 00–40298, Doc. No. 34), Eric Hill shall be and is hereby determined to hold a valid, enforceable, perfected, first priority lien and security interest in all of the assets of the Debtor, including but not limited to any state, county or city liquor licenses or permits for liquor by the drink, Sunday restaurant-bar, and extended hours, but not including any avoidance actions under Chapter 5 of the Bankruptcy Code, to secure aggregate obligations of the Debtor to Eric Hill in excess of $650,000.00. It is

**FURTHER ORDERED** that the automatic stay of 11 U.S.C. § 362 shall be and is hereby TERMINATED to allow Eric Hill to pursue any available relief against the assets of the Debtor, including but not limited to repossession and foreclosure. It is

**FURTHER ORDERED** that the Lease identified in the Motion shall be and is hereby REJECTED and, pursuant to the Lease Commitment Agreement identified in the Motion, Westport Nall has no claim against the Debtor (without prejudice to Westport Nall asserting any available claims, if any, against Novomira, Loy Edge or Jay Edge). It is

**FURTHER ORDERED** that, upon satisfaction of the Conditions Precedent identified in paragraph 7 of the Settlement Agreement, Eric Hill shall be and is hereby directed to pay the Debtor the amount of $50,000.00 in immediately available funds. It is

**FURTHER ORDERED** that, by separate order of this Court, entered contemporaneously herewith, Adversary No. 00–4059 shall be and is hereby DISMISSED WITH PREJUDICE, each party to bear its own costs.

**SO ORDERED.**