In re Anthony J. DeLAURO, Debtor.

Bankruptcy No. 96–28675 (NLW).

United States Bankruptcy Court,
D. New Jersey.

April 9, 1997.

Riker, Danzig, Scherer, Hyland & Perretti by Warren J. Martin, Jr., John S. Mairo, Morristown, NJ, for Carol Ann DeLauro.

Wacks, Mullen & Kartzman by Steven P. Kartzman, Morris Plains, NJ, for Trustee.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Before the court is the motion by Carol Ann DeLauro (i) for relief from the automatic stay, (ii) to compel the debtor to execute the necessary documents to convey title to real and personal property, or (iii) to allow movant to obtain a state court order to compel execution of the documents. Although the debtor did not oppose the motion, the Chapter 7 trustee requests that the motion be denied principally on the ground that the property is estate property under 11 U.S.C. § 541(a). For the reasons set forth below, the court finds that relief should be granted to the movant.

The court has jurisdiction over this matter pursuant to 28 U.S.C., § 1334 and the Stand-

ing Order of Reference by the United States District Court of New Jersey, dated July 23, 1984. This motion is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (O).

## STATEMENT OF FACTS

Carol Ann DeLauro ("Carol") and Anthony DeLauro ("Anthony") were married in 1974. After thirty years of marriage, in July, 1994, Carol filed for divorce, and in June, 1996, she and Anthony entered into an agreement pursuant to which the marital assets were distributed ("Agreement"). Shortly thereafter the Superior Court of New Jersey entered a Dual Judgment of Divorce ("Divorce Judgment") which, *inter alia*, incorporated the Agreement reached by Carol and Anthony.

In a certification dated January 15, 1997 Carol states that she entered into the Agreement because she desired to move on with her life and not be dependent on Anthony's compliance with any alimony or support that would otherwise be awarded. She noted that during the matrimonial proceeding Anthony repeatedly failed to comply with court orders. For example, in July, 1995 the court ordered his incarceration in order to compel him to comply with six prior court orders dating back to September 21, 1994. (1/15/97 Cert., Exh. A).

Because of this history in the matrimonial proceeding Carol agreed to accept various parcels of real property, and a 1929 Ford Phaeton ("State Court Judgment Properties"), in exchange for (i) waiving her right to alimony and/or support, (ii) waiving any claim to his business, (iii) waiving any claim to his share of the home he purchased with his girlfriend, and (iv) waiving any right to support for their daughter, Kim.

Because the subject matter of the Agreement is the same property at issue in the motion before the court, its terms bear close examination. Pursuant to the Agreement Anthony agreed to transfer all of his interest in four parcels of real property to Carol in fee simple absolute. As to a fifth parcel of real estate which Anthony had inherited, he agreed to transfer his interest to Carol and the three children of the marriage as joint tenants, with a right of survivorship in the

children. Additionally, he agreed to transfer to Carol his interest in the 1929 Ford Phaeton. The Agreement further provided for Anthony to execute and deliver to Carol the necessary deeds and certificate of title. Finally, as previously indicated, the Agreement explicitly provided that Carol waive any claim to alimony and/or spousal support. The Agreement also allocated payment of certain joint debts and further provided for Anthony to contribute to payment of health insurance.

Apparently Anthony did not readily comply with the requirement to execute and deliver deeds and certificate of title, and on September 12, 1996 Carol's counsel filed a motion to compel enforcement of the Divorce Judgment. In fact, it appears from Carol's certification in support of the motion (1/15/97 Cert., Exh. E) that Anthony wholly failed to comply with any of his obligations under the Agreement and Divorce Judgment. On September 30, 1996, before the matter could be heard in Superior Court, Anthony filed a petition for relief under Chapter 7 of the Bankruptcy Code.

The United States Trustee appointed Steven P. Kartzman ("Trustee") as the case trustee. The Trustee opposes Carol's motion on various grounds. First, he contends that because no deeds or certificate of title were executed, delivered, or recorded, the State Court Judgment Properties were not effectively conveyed by the Agreement, and thus the bankruptcy estate includes such properties notwithstanding the intent of the Agreement. Second, he argues that because a trustee is vested with the rights of a judicial lien creditor under 11 U.S.C. § 544(a)(1), in the event either this court or the Superior Court authorizes conveyance of the properties, they are subject to his rights as a lien creditor. Third, he posits that the Agreement and Divorce Judgment constitute an executory contract which the Trustee may reject under 11 U.S.C. § 365. Further, the Trustee appears to argue that he can void the Agreement and Divorce Judgment under 11 U.S.C. § 548. The Trustee's position that he can either reject the Agreement under § 365 or void it under § 548 rests in part on the notion that no adjudication on the merits was made by the state court because the Divorce Judgment provided as follows:

ORDERED that the following agreement, stipulated to by the parties in court and on the record, be and is hereby made a part of this Dual Judgment of Divorce *with the understanding that the Court took no testimony on the fairness or equitability thereof,* however, the Court does note that the parties and each of them testified that they entered into the agreement freely, voluntarily and under no duress or compulsion. (emphasis supplied).

In response to the Trustee, Carol observes that she has performed as the owner of the real property since early 1995 by paying the mortgages and taxes and collecting rent from one of the properties. She notes that since the Agreement was concluded in June, 1996, she has borrowed over $10,000 to pay past taxes on the properties. Furthermore, she intends to put three of the five properties on the market so as to obtain the funds needed to pay the debts which are her responsibility under the Divorce Judgment and to pay the remaining unpaid taxes.

Sale of the properties is also necessary because she does not have sufficient earned income to meet living expenses for her and Kim and to service the mortgage and tax obligations. Carol believes that sale of the properties will yield approximately $71,191.00 which will pay her creditors and legal fees with some remaining funds to apply to daily living expenses for her and Kim. Perhaps most importantly, Carol points out that the transfers were made in consideration for her waiver of alimony and/or support. Carol therefore urges that the court find that a constructive trust was created in her favor when the Agreement was concluded.

## CONCLUSIONS OF LAW

■ The Trustee correctly observes that upon commencement of a bankruptcy case an estate is created under § 541(a) which includes, *inter alia,* all legal or equitable interests of the debtor in property as of the commencement of the case. He argues that Anthony's interest in the real property and the Ford Phaeton are part of the bankruptcy estate because no documents transferring ti-

tle were executed and recorded. The Trustee argues that because no deeds were recorded as required by NJSA 46:22–1, and no certificate of title was recorded with the Division of Motor Vehicles, the Trustee, in his capacity as a bona fide purchaser and an executing lien creditor prevails over any equitable interest that is asserted by Carol. Thus, to decide the instant matter the court must determine whether a constructive trust exists in favor of Carol, and whether the trustee's strong-arm powers nonetheless defeat a constructive trust so as to make the State Court Judgment Properties property of the bankruptcy estate.

■ It is well recognized that the estate succeeds only to such title and rights as the debtor held at commencement of the case. *N.S. Garrott & Sons. v. Union Planters National Bank,* 772 F.2d 462, 467 (8th Cir.1985). Further, as well articulated by the Supreme Court in *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979):

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy. (citation omitted).

■ To determine whether Anthony had any interest in the State Court Judgment Property at the time he commenced his bankruptcy case it is necessary to examine New Jersey law regarding constructive trusts. In *Stewart v. Harris Structural Steel Co.,* 198 N.J.Super. 255, 265, 486 A.2d 1265 (App.Div.1984) the court stated that "It is fundamental that a constructive trust should 'be impressed in any case where to fail to do so will result in unjust enrichment.'" (citations omitted). It is also well settled in New Jersey that "[g]enerally all that is required to impose a constructive trust is a finding that there was some wrongful act, usually,

though not limited to, fraud, mistake, undue influence ... which has resulted in a transfer of property." *D'Ippolito, et al. v. Castoro, et al.,* 51 N.J. 584, 589, 242 A.2d 617 (1968). Thus, the essential purpose of a constructive trust is met by the facts of the present matter. As eloquently observed by Justice Cardozo:

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest equity converts him into a trustee.

*Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919).

■ In the matter at hand, under the terms of the Agreement Anthony agreed to satisfy certain debts and to transfer certain real property and personal property. Also under the Agreement Carol agreed to satisfy some joint debts and, in exchange for the transfers of property agreed to waive her claims to alimony and/or support, as well as any claim to Anthony's business. Anthony failed to comply with his responsibilities under the Agreement, and in the face of a motion to compel compliance brought in the Superior Court, he filed for Chapter 7 relief. As a consequence, he has shielded himself from creditor demands on those debts that were his responsibility, and Carol is left not only without the property that was to have been transferred, but also without any alimony or support. At present, she not only lacks sufficient funds to sustain herself and her daughter, but also must bear the full demands of creditors who would otherwise be paid by Anthony.

Upon these facts, the court finds that the law of New Jersey imposes a constructive trust on the State Court Judgment Properties in favor of Carol. Though the present case involves a wrongful and willful failure to convey rather than a wrongful transfer, imposition of a constructive trust is necessary to prevent unjust enrichment. *See also In re American Intern. Airways, Inc.,* 44 B.R. 143, 146 (Bankr.E.D.Pa.1984) ("a court will impress a constructive trust [when] a person holding title to property is subject to an

equitable duty to convey it to another person ...").

■ The Third Circuit has recognized that Congress intended that § 541(d) would apply to exclude not only the property of express trusts but also property subject to constructive trusts. *In re Columbia Gas,* 997 F.2d 1039, 1059 (3d Cir.1993). Accordingly, since the court finds that the State Court Judgment Properties are subject to a constructive trust in favor of Carol, the court also finds that under § 541(d) they never came into Anthony's bankruptcy estate. By reason of the constructive trust all that Anthony held as of the petition date was bare legal title. Despite the expansive language of § 541(a), § 541(d) provides that "property in which the debtor holds as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

Several courts have applied this constructive trust analysis where, as in the present case, a divorce judgment was entered prepetition. *See, e.g., In Re McCafferty,* 96 F.3d 192, 198–99 (6th Cir.1996); *In re Reider,* 177 B.R. 412, 416 (Bankr.D.Me.1984); *In re McGraw,* 176 B.R. 149, 150–51 (Bankr. S.D.Ohio 1994). Additionally, without addressing constructive trusts, other courts have simply held that if a divorce judgment transfers a debtor's equitable interest, albeit not his legal interest, in the marital property prior to his filing for bankruptcy, the nature and extent of his interest in property is determined by the divorce judgment and the property should not be viewed as part of the bankruptcy estate. *See Resare v. Resare,* 154 B.R. 399, 401 (D.R.I.1993) (declaring that the portion of the debtor's pension that was transferred in the divorce decree was not considered part of bankruptcy estate); *In re Zick,* 123 B.R. 825, 829 (Bankr.E.D.Wis.1990) (awarding ex-wife a portion of pension fund which had been transferred in divorce settlement); *see also In re Boyer,* 104 B.R. 497, 499 (Bankr.S.D.Fla.1989) (holding that funds

awarded in divorce decree to non-debtor spouse were not property of estate).

■ However, it is necessary to consider the effect of the trustee's strong-arm powers since the bankruptcy estate may be augmented by property recovered by a trustee pursuant to the avoidance powers found in §§ 544 through 551. *In re Becker,* 136 B.R. 113, 116 (Bankr.D.N.J.1992); *In re Elin,* 20 B.R. 1012, 1016 (D.N.J.1982) *aff'd* 707 F.2d 1400 (3d Cir.1983). Thus, the court must decide whether the trustee may avoid the constructive trust imposed upon the State Court Judgment Properties.

■ The court concludes that the constructive trust is valid as against the trustee's avoidance powers and may not be avoided. Sections 544(a)(1) and (a)(3) do not confer upon a trustee any greater powers than are available to an actual creditor or subsequent purchaser under state law. *In re Bridge,* 18 F.3d 195, 200 (3d Cir.1994); *Elin,* 20 B.R. at 1018–19 (Congress "did not intend to transform the trustee into a 'super-priority' creditor.").

Under N.J.S.A. 46:22–1 only instruments recordable under N.J.S.A. 46:16–1 must be recorded to defeat a subsequent judgment creditor or bona fide purchaser without notice. Unsurprisingly, constructive trusts which are imposed by the courts, rather than created by written instrument, are not covered by N.J.S.A. 46:16–1. Roger A. Cunningham & Saul Tischler, 29 New Jersey Practice, Law of Mortgages, § 103 at 401 (1975). Similarly, "equitable interests not created by a recordable instrument—i.e., arising by implication, prescription, or operation of law—are valid as against subsequent judgment creditors without notice." *Id.,* § 104 at 402; *In re L.D. Patella Const. Corp.,* 114 B.R. 53, 58 (Bankr.D.N.J.1990); *Matter of Pearl,* 40 B.R. 860, 864–65 (Bankr. D.N.J.1990). Thus, the trustee's reliance on the New Jersey recording statute as the basis for employment of the Trustee's strong arm powers is unavailing.

■ The court also finds unpersuasive the Trustee's contention that any transfer of the debtor's legal interest ordered by this court or the Superior Court would be subject to

the trustee's rights as a lien creditor. The Trustee relies upon language in *Becker* which states:

> The filing of a bankruptcy petition is therefore the legal equivalent of a levy by the trustee upon all of the debtor's property as of the petition date. It follows that equitable distribution cannot alter a bankruptcy estate's rights in property in which the debtor had an interest on the petition date, whether jointly owned or otherwise.

126 B.R. at 118.

However, pursuant to § 541(d), bare legal title is an insufficient basis for the estate to assert any interest in the State Court Judgment Properties. *Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1012–13 (5th Cir.1985). The court in *Quality Holstein* specifically addressed the interaction between § 541 and § 544. In the course of its examination of the two sections the Fifth Circuit stated that as a general rule § 541(d) prevails over the trustee's strong-arm powers, and further observed that "Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." 752 F.2d at 1013. Moreover, *Becker* is factually distinguishable from the instant matter. There the matrimonial case was still pending and no equitable distribution of marital property had occurred. In the case before this court the property was allocated by the Agreement and Divorce Judgment before Anthony filed his case, and this court has found that a constructive trust was imposed as of the date of the Agreement.

■ Similarly, the court does not find that the Settlement and Divorce Judgment constitute an executory contract which the trustee may reject. Courts generally have defined an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corporation v. National Fuel Gas Distribution Corporation*, 872 F.2d 36, 39 (3d Cir.1989) (citations omitted).

In this matter, the only party from whom performance is due is Anthony.

Carol fully performed her obligation under the Agreement by releasing Anthony from his support obligations. All that remained was Anthony's obligation to convey the State Court Judgment Properties. *See, In re KMMCO, Inc.*, 40 B.R. 976 (D.Mich.1984). In *KMMCO* the debtor sought to reject a settlement agreement with the widow of the debtor's former president. Under the agreement the widow released her rights under her deceased husband's employment agreement in return for receipt of death benefits payable to her until such time as she died, remarried, or cohabited with a man. The court found that the widow had fully performed by releasing her rights under the employment agreement, and thus the agreement was not executory as to her. 40 B.R. at 979. Similarly, no continuing obligation remains to be performed by Carol in connection with the transfer of the State Court Judgment Properties.

■ Moreover, the court agrees with Carol that the Trustee may not collaterally attack the Settlement and Divorce Judgment. Though the Divorce Judgment contains a decretal paragraph that states that the court did not take any testimony on the fairness or equitability of the Agreement, it further provides that both parties testified that they entered into the agreement voluntarily. Thus, in this court's view the Agreement and Divorce Judgment are analogous to a consent decree, which is held to possess "the same force with regard to res judicata and collateral estoppel as a judgment entered after a trial on the merits." *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 96–97 (3d Cir. 1981).

Finally, the court joins these courts that hold that the bankruptcy court "will not review state court property determinations as some sort of super-appellate court." *In re Ford,* 78 B.R. 729, 734 (Bankr.E.D.Pa.1987); *In re Howard,* 27 B.R. 894, 895–96 (Bankr. W.D.Ky.1983); *In re Halub,* 25 B.R. 617, 619 (Bankr.C.D.Cal.1982); *In re Moore,* 5 B.R. 67, 68–69 (Bankr.N.D.Tex.1980). As one court aptly concluded:

We are increasingly troubled by the trend of parties to leave Domestic Relations Court with an agreement that settles property and alimony matters, only to immediately walk down the street to the federal courthouse and attempt to relitigate those issues. Such actions call into question the good faith of the parties and their counsel and raise thorny issues of comity and finality of judgments, to say nothing of attempting to make the Bankruptcy Court into some type of appellate divorce court.

*McGraw*, 176 B.R. at 152. The creation, application, and enforcement of domestic relation laws are matters that historically have been the province of the States. Bankruptcy court rulings should "impinge on state domestic relations issues in the most limited manner possible." *In re Harrell*, 754 F.2d 902, 907 (11th Cir.1995).

### CONCLUSION

The Court finds that a constructive trust arose in favor of Carol upon execution of the Agreement, which was thereafter incorporated in the Divorce Judgment. Accordingly, the State Court Judgment Properties never became property of the bankruptcy estate, and Carol is granted relief from stay to obtain an order from the Superior Court which compels Anthony to execute the deeds and certificate of title necessary to memorialize the transfers of property.